CHAPMAN *v.* MELTON.

5-623                                            276 S. W. 2d 39

Opinion delivered March 7, 1955.

*Gean & Gean,* for appellant.

*Franklin Wilder* and *Heartsill Ragon,* for appellee.

GRIFFIN SMITH, Chief Justice. Wilbur Chapman and his wife Lois, as plaintiffs below, have appealed from a decretal dismissal of their claim to a tract of land 60 x 140-ft. upon which they had reconstructed a home. Oral agreements and adverse possession are asserted.

In May, 1945, the Chapmans and Marion Melton and his wife Serena purchased about eleven acres in Fort Smith fronting Fifty-Fourth street on the east and transversed by Johnson street on the north. The area embraces slightly more than eleven acres. An east-west bisecting line would burden the north half with the street, thus giving to the south half a slightly larger unimpaired spread.

Wilbur Chapman and Serena Melton are brother and sister and the family relationship was quite cordial until the misunderstanding resulting in this litigation occurred. An old house and barn, each in poor condition, were on the south half near the southeast corner. The barn was south of the three-room house and by agreement Melton converted it into a home, while Chapman moved into the house, to which he added one room. Material salvaged from a house that had been partially washed away was used by Chapman.

The entire tract was bought by Chapman and Melton for $2,000. Melton appears to have had some knowledge of business transactions, but Chapman could not read or

write. The deed was to Marion and Serena Melton and created in them an estate by the entirety. In March, 1949, when all of the purchase money had been paid, the Meltons deeded to Chapman and his wife under a metes and bounds description what proved to be the north half of the land, but included in that half was footage equal to the width of Johnson street. The recited consideration was one dollar "and division of property owned jointly to us."

November 22, 1952, the Meltons mortgaged the south half to First Federal Savings and Loan Association of Fort Smith to secure an indebtedness of $1,500.

The Chapmans sold to Claude King for $2,000. However, Wilbur claims that when the purchaser ascertained that the area of the so-called north half was slightly less than half of the entire tract he refunded $100.

There was testimony by relatives and others favorable to the Chapmans regarding conversations between Wilbur Chapman and Marion Melton when the two families moved into the shack and barn. This was to the effect that Chapman moved into the dilapidated house and made moderate repairs and built an extra room under an agreement that title would pass to him, including a land area of 60 x 140 feet; but, coming from interested persons who sustained Melton's contentions, the evidence was equally strong that the agreement related to occupancy of the house only, with the right to move it to a selected location on the north half. Chapman said that when he rented the four-room house to John D. Boyd for a short while at $15 per month he tried to sell the place to him, offering to take $2,000, but "when he wouldn't buy I tried to give it to him." This statement was qualified by the explanation that the low price asked was, in effect, "a giveaway."

Boyd, who appears to have been a disinterested witness, testified that Chapman tried to sell the north acreage to him. There was a discussion regarding the house on the south half, resulting in an offer by Chapman to

take $2,700 and move the house; or, if Boyd would do the moving the price would be $2,100. Melton testified that the fence around the old house was there when he and Chapman bought the acreage; Chapman insisted that he built it, and Boyd testified that "I built it for my own protection," first having secured Melton's permission. Perhaps the facts lie somewhere between these extreme claims. The fence, said Boyd, was constructed of poles.

Chapman, as exhibits to his testimony, filed tax receipts showing payments in his name for 1949,-'50,-'51, and -'52. The first three show that five and a half acres were assessed. The 1952 receipt shows the total payment to have been the same as that made for the preceding year. Chapman sold to King in August, 1952. The last tax payment was April 1, 1953, but apparently covers the five and a half acres.

Appellant cites *Dyer* v. *Dyer,* 116 Ark. 487, 173 S. W. 394, as authority for the proposition that if one holds land belonging to another under a parol promise to convey, and relying upon such promise makes valuable improvements, "the case would not fall within the Statute of Frauds."

Although the Chancellor was of opinion that the small value of the improvements Chapman claims he made might well sustain appellees' invocation of the statute, we do not find it necessary to decide that point, although the rule is that to avoid the statute evidence that the parol contract was made and that there had been substantial performance must be clear and convincing. *Hudspeth* v. *Thomas,* 214 Ark. 347, 216 S. W. 2d 389.

From the standpoint of preponderating testimony alone appellants have not sustained their allegations.

It is significant that Melton's deed to Chapman recites a division of property jointly owned.

The decree permits Chapman to remove the house, subject to rights created in favor of the Building and Loan Company.

Affirmed.

Mr. Justice HOLT did not participate in the consideration or determination of this case.